MORRIS F. BRAINARD and Another, Respondents, *v.* THE COUNTY OF KINGS and Others, Appellants; CHARLES A. CREGIN and Others, Respondents.

*Mechanic's lien — limitation of the liability of counties upon their building contracts — surrender of their contract by sub-contractors — when the creditors of the sub-contractors can recover from the owner.*

The liability of counties upon their building contracts is limited by section 88 of chapter 629 of the Laws of 1892 to the amount due the contractors.

Certain building contractors sublet a portion of the work which they had contracted to do, and their sub-contractors, after performing a portion of the work they had agreed to perform, upon a certain date refused or were unable to continue work under their sub-contract. They voluntarily surrendered their contract to the contractors and the latter voluntarily proceeded to finish the work prescribed therein. The sub-contractors wrote the contractors a letter in the following words:

"DEAR SIRS: — You are hereby authorized to take charge of work we have been doing under our contract to build bridge at Meeker ave., Brooklyn, and complete the same for our account. We do not waive by this provision our rights under the original contract, or any extra work accruing from same, we to receive one-half of the profits accruing on such extra work."

*Held*, that there was not a rescission of the contract between the contractors and the sub-contractors, leaving due the sub-contractors the amount (twenty per cent) withheld by the contractors under the terms of the contract and the amount agreed to be paid for work done by such sub-contractors; but it was an

arrangement entered into by which the contract was agreed to be assumed and carried out on account of the sub-contractors, they not waiving their rights under it, and being entitled to receive all the profits under the contract and one-half of the profits of the extra work ;

That it would be assumed that the contractors, by finishing the work provided for by the sub-contract, accepted such proposition of the sub-contractors ;

That, in order to entitle the creditors of such sub-contractors to recover the amount due them, by filing a lien under the Mechanics' Lien Law, they must show that some amount became due them from the contractors for work done under such sub-contract, assumed by them, on the final completion by the contractors of the work carried on by them for account of the sub-contractors.

APPEAL by the defendants, The County of Kings and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 27th day of September, 1894, upon the decision of the court rendered after a trial at the Kings County Special Term adjudging the amounts respectively due the various parties under a certain building contract made by the counties of Kings and Queens.

*F. H. Van Vechten,* for the county of Queens, appellant.

*Kellogg, Rose & Smith,* for Dean & Westbrook, appellants.

*George Q. Collins,* for the plaintiffs, respondents.

*James Stikeman,* for the King Bridge Company, defendant and respondent.

*Horace Secor, Jr.,* for Graves & Steers and Jos. Edwards & Co., defendants and respondents.

PRATT, J.:

It seems to be conceded, on the part of appellants, that the judgments in favor of Drake, Stratton & Co. (Limited), and the King Bridge Company should be affirmed, so that the only points to be considered relate, *first,* to the question of error raised by the two counties as to the amount due the contractors of $50,000, and, *second,* whether the lienors, creditors of Cregin & Co., are entitled to judgments.

The first question is of small moment as it can be readily corrected. Of course, everybody concedes that the liability of the counties is limited by the statute to the amount due the contractors

(§ 88, chap. 629, Laws of 1892), which can be easily ascertained, or the counties can be relieved by a stipulation that, in no event, shall they be called upon for more than is due.

The difficult question is the second, relating to the creditors of Cregin & Co If they are to succeed it must be by showing that on or after April 13, 1893, some amount became due Cregin & Co. from Dean & Westbrook for work done under their contract. By their refusal or inability to go on under their contract Dean & Westbrook were put in a position where they must either go on and finish the contract or forfeit all rights under it.

The Cregins voluntarily surrendered up the contract to be performed by Dean & Westbrook, and the latter voluntarily accepted that duty and proceeded to finish the work described in the contract. After an interview with the engineer for the counties, in which Cregin had stated that he could not go on, and on April 13, 1893, they wrote the following letter to Dean & Westbrook:

"*April 13th,* 1893.

"Mess. DEAN & WESTBROOK:

"DEAR SIRS :—You are hereby authorized to take charge of work we have been doing under our contract to build bridge at Meeker ave., Brooklyn, and complete the same for our account. We do not waive by this provision our rights under the original contract, or any extra work accruing from same, we to receive one-half of the profits accruing on such extra work.

"Yours truly,

"C. A. & T. CREGIN."

And Dean & Westbrook at once proceeded to finish the work.

I do not think this amounted to a rescission of the contract between them, leaving the twenty per cent withheld, and the work done since last pay day due the Cregins, but it was an arrangement entered into by which the contract was agreed to be assumed and carried out on account of Cregin & Co., they not waiving any rights under it, and to receive all the profits and one-half of the profits of the extra work. It must be assumed that Dean & Westbrook accepted this proposition and finished the work under it. It seems to me that under this arrangement, supposing that the contract thus assumed by Dean & Westbrook had been completed at a profit, that in such case the Cregins would have been entitled, on an

accounting with Dean & Westbrook, to the twenty per cent that had been withheld, also to be paid for all the work that had been done up to April 10, 1893, the day they quit work, and to one-half the profits on extra work, if any. It seems to me clear that the same rule should apply when a loss occurs in completing the contract.

It was to be done for the Cregins "*for our account*," to wit, their account. I pay no attention to the claim that no pay was due and payable until the seventeenth of April under the contract, as some work had been done which would become payable on that day, and in this case we must regard it as equitably due, as between the Cregins and Dean & Westbrook, as it would have been allowed on an accounting between them. Dean & Westbrook did not take the contract off the hands of the Cregins, but assumed to finish it at that date on their account.

What were the rights under the original contract that the Cregins did not waive? I assume that they were to receive when the contract was complete the full price thereof, including the twenty per cent withheld as security, and pay for any extra work, but were entitled to nothing unless they performed their contract. The words " our account," in the letter of April thirteenth, is the key note. The proper construction of these words is that the Cregins were to be responsible for the cost of the work and to receive the pay for it, otherwise the words have no meaning. If this is a proper construction of the arrangement between Cregin & Co. and Dean & Westbrook, then when did anything become due from Dean & Westbrook to them? The twenty per cent could not become due until thirty days after completion of the contract, which Cregin & Co. never completed until after the twenty per cent and the sum due for work by them had all been exhausted in completing the contract, so that at no time did Cregin & Co. have anything due them from Dean & Westbrook. Can it be said that Dean & Westbrook, under the circumstances, took the risk of finishing Cregin & Co.'s work under the contract on their own account and allow Cregin & Co. credit and pay them for all the work up to that time, together with the reserve of twenty per cent? They did not say so, neither did the letter of the Cregins contain any such intimation. This is the theory upon which the judgment is based. The trial judge has found that at the time the contract was assumed by Dean & Westbrook there was due

SECOND DEPARTMENT, FEBRUARY TERM, 1895. [Vol. 84.

Cregin & Co. about $3,000 earned since the last pay day (seventeenth of March) and the twenty per cent reserve provided for in the contract, but it must be observed that much labor and materials had been expended on the work before any lien was filed, and if it was done *on account* of Cregin & Co., then that must be deducted in order to ascertain what, if anything, was due Cregin & Co. at the time of filing the separate liens.

We are obliged either to hold that at the time of Dean & Westbrook's assuming to finish the contract that there was due to Cregin & Co. the said twenty per cent reserve and for labor up to April 10, 1893, about $3,000 which has remained unpaid up to the filing of liens, or we must hold that the contract was completed on account of Cregin & Co., and that it is not shown what, if anything, became due to them. It is to be observed that Cregin & Co. were not entitled to anything until the contract was finished. There was not at any time anything due them from the counties defendants here, neither does the evidence or findings specifically show what was due when any lien was filed except that it is found that the amount for labor since last pay day and the twenty per cent reserve is found to be due up to the filing of the last lien in July, 1893.

The whole question turns upon the letter and on the words " for our account." If Dean & Westbrook took the contract off the hands of the Cregins at their own risk, intending to allow the Cregins all they had earned up to date and the twenty per cent reserve, then this judgment is entirely right; if, on the other hand, they assumed, and that was the contract, to finish the work for account of Cregin & Co., then at no time did they owe Cregin & Co. anything. It seems to me that the latter is the true construction, and that the judgments of the lienors, creditors of Cregin & Co., must be set aside and a new trial granted.

The judgments of Drake, Stratton & Co. (Limited) and the King Bridge Company affirmed.

New trial as to the other defendants.

DYKMAN, J., concurred.

Judgment appealed from affirmed as to the defendants Drake, Stratton & Co. (Limited) and the King Bridge Company; new trial granted as to the other defendants.