WILLIAM O. GARRISON

v.

JAMES BORIO et al.

[Filed January 16th, 1901.]

1. The court of chancery is the proper forum for proceedings under the Lien act of March 30th, 1892 (*Gen. Stat. p. 2078*), to secure the payment of laborers, &c., furnishing materials and doing work on public improvements.

2. When the complainant files his claim asserting as against one of the defendants a claim for more money than is found to be due from that defendant, the complainant does not thereby forfeit his right to establish his lien on the fund for such sum as is actually due him from such defendant.

3. Under the Lien act of March 30th, 1892, persons who have furnished material or done work on the public improvement, under agreement with a subcontractor, may assert a lien on the contract price.

4. If at the time when such lien is filed nothing remains owing to the subcontractor, the lien attaches upon no part of the contract price.

5. No personal judgments will be given in a suit brought under the above statute in this court to enforce liens upon the contract price.

On bill, &c. On final hearing.

*Mr. Walter H. Bacon,* for the complainant and for Smith Tomlin, agent, one of the defendants, who files a cross-bill.

*Mr. William A. Logue* and *Mr. Clement H. Sinnickson,* for the defendant Burd P. Evans.

*Mr. Samuel H. Richards* and *Mr. Thomas E. French*, for the defendant Tony Stelacio.

*Mr. Samuel Iredell,* for the board of chosen freeholders of Cumberland county.

GREY, V. C. (orally).

I can dispose of this case now. I have heard, with attention, the testimony and the arguments of counsel, and find no need for further consideration of the matters submitted, save as to the part which may be sent to a master.

This bill is filed under the Lien act of March 30th, 1892 (*Gen. Stat. p. 2078*), to secure the payment of laborers, &c., furnishing materials and doing work on public improvements, &c.

The complainant alleges that he supplied building stone used for the construction of the foundation of an insane asylum in Cumberland county; that he furnished this material to Borio and Stelacio, subcontractors, who had agreed with Burd P. Evans (the original contractor with the board of freeholders for the whole work) to do the foundation stone work and furnish material therefor.

The work was begun and had made some progress when, on or about May 5th, 1899, Borio ran away, with a considerable payment of money made to him on account of his firm. This incident was the occasion of most of the subsequent difficulties. Stelacio, who theretofore had not been actively engaged in the erection of the asylum, came to Bridgeton, after a few days, and proceeded with the mason work. Stelacio continued at the work, Garrison continuing to supply stone, until some time in June, 1899, when Stelacio surrendered because he was unable to complete it. About July 9th, 1899, Evans, the original contractor, himself undertook to finish the work left undone by Stelacio, and the complainant thereafter furnished material to Evans until the foundation walls were completed.

The whole dispute in this case turns upon the claim of the complainant for payment for the materials, mostly foundation stone, supplied by him and used in the asylum building. The differences raise questions both of law and of fact. The com-

plainant files his bill under the statute of March 30th, 1892 (*Gen. Stat. p. 2078*), contending, *first,* that Evans, the original contractor, guaranteed the payment of the price for the stone furnished by the complainant to Borio and Stelacio; *second,* that, under the above-named statute, the complainant has a lien for the price of the material furnished to Borio and Stelacio upon all that part of the contract price which is still unpaid by the board of freeholders to Evans, and *third,* that he has a lien upon that fund for the price of the material furnished to Evans, after Borio and Stelacio had abandoned their contract.

The defendant Evans denies liability of any sort whatever, as guarantor, or under any lien, for the debt of Borio and Stelacio. He admits liability for the material furnished to himself after they had abandoned the work, but denies the complainant's right to a lien, because, he says, he has claimed more than is due. Evans also contends that the statute does not authorize Garrison to lien upon the original contract price for the debt owing him by Borio and Stelacio; and he disputes the quantity of stone claimed to have been delivered by the complainant, and pays into court the amount which he admits to be due from him.

There is another small claim for digging, &c., set up by the defendant Smith Tomlin, which is also alleged to be a lien under the statute quoted. The dispute regarding this Tomlin matter is principally as to the quantity of work which should be paid for by way of lien.

All of the contracts are in writing, except the alleged guarantee of Evans to pay Borio and Stelacio's debt. Garrison testifies that this was by parol assurance, claimed to have been made at the time when Garrison (the complainant) and Borio and Stelacio made their agreement. As to the written contracts, their terms are so definitely expressed that their meaning can be readily ascertained by mere reference to the contracts themselves. The nature of the case is such that there should be a reference to a master to ascertain and report the precise amount due and lienable. At the present time I will only dispose of such questions of law and fact as may aid the master in giving definite shape to his report.

I find as an established fact that the contract for furnishing stone, &c., for the foundation wall, originally made between Garrison (the complainant) and Borio and Stelacio, was between those parties and none other; that from the beginning of the building to the time Borio ran away, in May, 1899, and thence until Evans actually undertook to complete Borio and Stelacio's contract, on or about July 8th, 1899, all of the stone delivered at the asylum by Garrison was furnished under his contract with Borio and Stelacio, except a small portion for which Evans gave a written order; that the defendant Evans did not, in fact, guarantee the payment by Borio and Stelacio, or by Stelacio, of either the whole or any part of their debt to Garrison.

These findings of fact make it unnecessary to consider the effect of the statute of frauds upon the alleged parol guaranty by Evans of the payment by Borio and Stelacio of their debt to Garrison. Evans' liability for material which should have been furnished by Borio and Stelacio began when Garrison, about July 9th, 1899, received from Evans a letter telling him that he (Evans) would go on with the work, and directing Garrison thereafter to furnish stone to him.

The contract between Garrison and Borio and Stelacio provides for the delivery of the stone "at the site of the asylum." Delivery there, in the absence of express agreement otherwise, passed the title to the delivered stone to Borio and Stelacio. If any remained on the ground, when Evans undertook the completion of the contract, it was the stone of Borio and Stelacio, and not of Garrison, and must be accounted for to them, and not to him. Their failure to pay for the stone did not remit the title to it to Garrison.

I also find as a fact that all of the money due from Evans to Borio and Stelacio for work done and materials furnished by them, under their contract with Evans, was, by the latter, paid to them, or by Evans expended for them in furnishing the work and material which they had agreed to supply by that contract, and that this was so disbursed by Evans before the lien was filed, on December 6th, 1899, in this matter by the complainant.

I am free to say that, after the most careful attention to the evidence, while it is quite clear that the portion of the stone

furnished by Garrison to Evans was used in the building, I am quite unable to fix, with certainty, the point of separation between that portion of the stone furnished by Garrison which he delivered to Borio and Stelacio, and that subsequently delivered to Evans on the latter's personal undertaking of the contract. Consequently, it is difficult to calculate the quantity furnished to Evans, and to compute the price to be paid, and thus fix the balance which is owing by Evans to Garrison. For this reason I propose (unless the parties can themselves come to an agreement as to the amount) to refer the matter and all the testimony here taken to a master for further inquiry. There was also some proof of special orders for particular items of material given in writing by Mr. Evans.

I will make an order advising a reference to a master to ascertain and report upon these matters, allowing the parties, if they desire, to make additional proofs on these points—that is, the quantity of work and labor done and material furnished by Mr. Garrison to and for Mr. Burd P. Evans for the purpose of building the asylum, ordered in writing by Mr. Evans, or delivered at the asylum after the date when Mr. Evans personally undertook the completion of the contract previously made between himself and Borio and Stelacio, and finally abandoned by them in June, 1899.

A very interesting and forcible argument has been made here upon several points of law, which should be now determined.

The answer of the defendant Evans asserts that the complainant has an adequate remedy at law, but the court of appeals, in *Delafield Construction Co.* v. *Sayre, 31 Vr. 449,* held that this court was the proper forum in which to enforce the statutory remedy under the act of March 30th, 1892.

The counsel for Mr. Evans also insists that the complainant has forfeited his remedy by lien, by claiming from Mr. Evans payment for that portion of the complainant's claim which is owing for material furnished to Borio and Stelacio, and in support of this view cites the case of *Reeves* v. *Elmendorf, 9 Vr. 125,* as in point, and contends that the complainant's bill, even if there be an existing lienable debt due him from Mr. Evans

Garrison v. Borio.

for part of the money claimed, should be dismissed because of the complainant's demand of more than is due him.

The rule declared in *Reeves* v. *Elmendorf* is based upon the provisions of the third section of the old Mechanics' Lien act, which require that the amount demanded of the contractor should be the amount due, and the owner, under the terms of that act, must be notified to retain this amount and no greater sum, and seems to have been enforced only when claims are made under that act. In *Delaware, Lackawanna and Western Railroad Co.* v. *Oxford Iron Co., 6 Stew. Eq. 203,* this court held the rule not applicable to the claim of laborers for wages set up under the sixty-third section of the Corporation act. In the very recent case of *Camden Iron Works* v. *Camden, 15 Dick. Ch. Rep. 211,* which was a claim filed and sought to be enforced under the same act of 1892 now before me in this cause, Vice-Chancellor Reed held that if it was shown there was a fraudulent purpose to impound a sum larger than that which was definitely known to be due the claimant, the court would refuse its assistance to such a fraud; but that where the course of the cause indicated that the party and his counsel deemed the larger claim, as asserted, to be worthy of submission to judicial determination, the fact that it was found to be partially invalid did not brand the whole claim as fraudulent and discharge the lien. I shall follow this method of enforcing the provisions of the act of 1892.

It is quite evident that the complainant's (Garrison) action in insisting that Mr. Evans is responsible for the moneys due Garrison under his agreement with Borio and Stelacio, is the result of the advice of counsel that his claim against Evans, as a guarantor of the Borio and Stelacio debt, was a disputable matter, worthy to be submitted to this court for adjudication. I find that is a mistaken contention, but, if it is a mistake, it is not one which would justify the court in refusing to entertain that portion of the claim against Evans which is admittedly due. This debt of Evans to Garrison for the stone expressly ordered by the former, is admitted by Evans himself to be within the purview of this statute. Evans has himself come into court and here tendered the amount which he admits is due to Gar-

rison.   There is some testimony which indicates a disposition, on the complainant's part, to color the proofs to establish Mr. Evans' liability for the Borio and Stelacio debt, but I do not think it sufficient to justify the refusal of relief on that part of his claim which is separable and admittedly due from Evans. The complainant's over demand is probably not in the amount claimed, but in his assertion that Mr. Evans is debtor not only for his own, but also for the Borio and Stelacio debt.   It is probable that the total sum claimed by Garrison for the material furnished is due him.   His error is in his contention that Evans owes it all.   I find against him on this point, but hold that the setting up of the claim and failure to establish it does not justify a forfeiture of his right to enforce his lien on the admitted debt of Evans to him.

The counsel for Mr. Evans insists that the statute must be construed to limit the lien to persons in privity with the original contractor who agrees to build, and that the debt of a contractor in the third degree, in which class he places Garrison (that is, one who contracts not with the original contractor, but with his subcontractor), cannot be enforced under the act of 1892, now under consideration, and he claims that the principles applied by the court of errors in *Carlisle* v. *Knapp, 22 Vr. 329,* should govern this case also.   That decision was made under the Mechanics' Lien act, and held that the third section of that act afforded no remedy to one who supplies materials to a subcontractor.   The decision depends upon the peculiar provisions of the statute which is expounded.   That act limits the right to impound the contract price to those in immediate privity with the contractor.   It does not provide, as does the act of 1892, now under consideration (see section 8), for what is practically an interpleader suit, bringing all claimants into court and fixing, by judicial decree, the amounts severally due to all persons who furnish materials used in the building.   The title of the act of 1892 declares it to be an act to secure the payment of "persons employed upon or furnishing materials towards the performing of any work in public improvements," &c.   The scope of the act, thus defined by its title, is quite wide enough to include all classes of persons who do work or furnish materials,

whether for the original contractor or for any subcontractor however remote from him.

The first section is quite as broad in declaring the extent of the lien as is the title in declaring the object of the act. It enacts that any person who, as laborer, mechanic, merchant, &c., in conformity with the terms of any contract for a public improvement, made between any person and any municipality, performs labor or furnishes material toward the performance of any such contract, shall, on complying with the second section of the act, have a lien upon the moneys in the control of the said municipality, due or to grow due under such contract, these liens may become absolute to the extent of the amount due or to grow due on the contract, in favor of every person who shall be employed or furnish materials to the person with whom the contract with the municipality is made or the subcontractor of the said person.

The counsel for the defendant Evans insists that this section gives the lien in favor of but two classes of persons—*first,* those who may be employed to furnish work or material to the original contractor, and *secondly,* in favor of the subcontractor of the original contractor. In my view this construction departs from the fair meaning of the words used. The context of the section appears to declare a lien in favor of every person (observe their class is not defined) who is employed to furnish work or material either to the original contractor or to the subcontractor of the original contractor.

This construction of section 1 accords with the object of the act as declared by its title, and secures payment of the claims of all persons of the classes recited in the title. The first section creates a preferred claim in favor of those who are employed to furnish work or material either to the contractor or to the subcontractor, and charges it, by the mode provided in the statute, upon the amount due or to grow due on the contract with the municipality. The second section prescribed the incidents of the claim. The fifth section declares the time when this preferred claim shall attach as a lien, and limits the extent of it to the liability of the contractor for the claim preferred— that is, the unpaid contract price is, when notice of the claim is

filed, charged with a lien for the price of materials furnished by any person, but the extent of the lien is the liability of the contractor to pay the claim to which the statute gives a preference. Take this case as an illustration, the claim of Garrison for material furnished to the subcontractors, Borio and Stelacio, would, under the statute, be a preferred claim upon the fund consisting of the contract price unpaid to Evans. The lien attaches at the date of the filing of the claim, and to the extent of Evans' liability then existing for that claim, not by any contract on Evans' part to pay it, but because it has been preferred by the statute. The preferred claim referred to in the fifth section is the right to be paid for the stone furnished to the building. It is given to Garrison by the statute. Evans accepted his contract with the municipality, subject to the preference given such claims under existing law. But Evans having, by his contract with Borio and Stelacio, been entitled to pay them for the very materials for furnishing which the claim is made by Garrison, and having actually fully paid them before any lien notice was actually filed by Garrison, has no further liability for this statutory preferred claim, nor can the contract price unpaid to him by the municipality be held to pay it. In short, my view of the true construction of the statute is that the statute will support a lien for material furnished to a subcontractor and used in the building, but when the original contractor, at a time when no lien notice was on file, has once paid a subcontractor for materials furnished and used in the building under a contract, he has discharged the unpaid contract price from liability to lien for those materials, and he cannot be compelled to pay over again for the same materials. The stone furnished by Mr. Garrison to Borio and Stelacio had been paid for to them by Evans long before Mr. Garrison filed his lien notice. This is, in substance, the construction given by the supreme court of New York to the same statute. In *Brainard* v. *County of Kings, 84 Hun 290,* the creditors of a subcontractor filed a lien for work performed by them for the subcontractor. It was held that they must show that the contractor was indebted to the subcontractor in some amount and that this amount was the extent of their lien. If it appeared there was

no such indebtedness of the contractor to the subcontractor, the creditors of the latter could have no lien.

It should be noticed that the seventh and eighth sections of the statute of 1892 provide for a proceeding to enforce the lien against the fund which is in the nature of an interpleader, and recognize the possibility of parties to such a suit "against whom no personal claim is made." So section 8 provides that the court, on the suit for the enforcement of the lien, shall determine the amount due from the contractor to the respective claimants. This does not refer to amounts due under the personal agreements of the contractor, but to what is due under the preferred claims given by the statute on the fund.

It has been declared by the court of errors, in *Delafield* v. *Sayre, 31 Vr. 449,* that there should be no personal judgment in suits on these liens.

I will dispose of this matter as follows: Unless, before February 11th, 1901, the parties shall agree upon the amount due the complainant, I will then advise a reference to a master to ascertain and report the amount due from the board of chosen freeholders of the county of Cumberland to Burd P. Evans remaining unpaid December 6th, 1899, and also what sum is due, or to grow due, to the said complainant from the defendant Burd P. Evans, under the findings expressed in this opinion, for work and labor done and material furnished by the said complainant to the said asylum, at the request of the defendant Evans, specifying the quantity of work and material and the price thereof, and allowing credit for all payments made thereon, stating the account, and ascertaining the balance of money due to the said complainant in that behalf.

I do also find as an established fact that the defendant Burd P. Evans is indebted to the defendant Smith Tomlin, agent, for work and labor done by him, on Evans' order, on the said asylum building for a balance amounting to the sum of $28.50, with interest thereon, from June 13th, 1899, to March 2d, 1900, to be added.

The master shall be guided by the opinion pronounced in this case. The admissions in the pleadings, and the testimony received in this case, may be used before the said master, and such

additional testimony, on the matter referred, as either party may submit. The master may apply for further instructions if necessary. Questions of cost to any of the parties and all further equity are reserved until the coming in of the master's report, or until final decree, if the parties agree as to the amount due Mr. Garrison.