JACOB MEURER

*v.*

FRED. KILGUS et al.

[Decided March 16th, 1910.]

1. A contract between a contractor for alterations on a public school building and a sub-contractor provided for "tin roofing cornices, slate work leader & all metal works for Lincoln ave. school as per plans & spec. by E. F. Gilbert, arch. & to his satisfaction, for the sum of twenty-seven hundred dollars ($2,700). Lincoln avenue school, accepted."— *Held,* that under this agreement, the sub-contractor was not entitled to his pay until he had finished his sub-contract, nor until the architect was satisfied that the work was properly done.

2. In a suit by a sub-contractor to foreclose a lien on an amount due from a city to a contractor for making alterations on a public school building, evidence of an agreement on the part of the contractor to make good the default of a sub-contractor, who contracted with plaintiff to furnish certain material, is incompetent, as the litigation is wholly statutory, and no relief can be afforded in such foreclosure upon such a contract, and the agreement by the contractor will not operate as an estoppel against him in the foreclosure proceedings.

3. A contractor with a city to make alterations in a public school house let a contract to a sub-contractor for a part of the work, and the sub-contractor contracted with a materialman to furnish part of the material. The sub-contractor failed to perform its contract, and the contractor paid a portion of the claim of the materialman, and, after the sub-contractor failed, let the contract to another sub-contractor. The amount paid the last sub-contractor and the amount paid to the materialman exceeded the amount which the contractor agreed to pay the first sub-contractor.—*Held*, that the materialman had no lien upon money owed by the city to the contractor.

On final hearing on bill, answer, replication and proofs.

*Mr. William H. Carey,* for the complainant.

*Mr. Conover English,* for the defendants.

HOWELL, V. C.

The bill in this case is filed to foreclose a lien which is claimed under the Municipalities Lien law. *P. L. 1892 p. 369.* The facts are as follows:

On August 6th, 1898, the defendant Kilgus, who is a master carpenter, made a contract with the board of education of the city of Orange to provide all materials and perform all the work for the erection and completion of alterations and additions to the Lincoln Avenue school building in that city, as shown on certain drawings and specifications prepared by the board's architect and made part of the contract.

On August 17th, 1908, Kilgus sublet the roofing and metal work to the American Skylight and Iron Works, under an agreement which read as follows:

"Aug. 17, 1908. American Skylight & Iron Works. Tin roofing cornices, slate work leader & all metal works for Lincoln Ave. school as per plans & Spec. by E. F. Gilbert, arch. & to his satisfaction, for the sum of twenty-seven hundred dollars ($2,700). Lincoln Avenue School, accepted. American Skylight & Iron Works, per Jeter. L. D. Kilgus."

In my opinion, the proper construction of this agreement is that the sub-contractor was not entitled to his contract moneys until he had finished his sub-contract, nor until the architect was

satisfied that the work was properly done. These are conditions precedent to any recovery by him against his contractor.

The complainant, Meurer, furnished materials to this subcontractor, all of which materials were used in the building. In the latter part of December, 1908, the sub-contractor failed. It abandoned the work under its contract so that the contractor was obliged to have the work finished by other agencies. On January 2d. 1909, the contractor, Kilgus, made the following contract with the Newark Cornice and Skylight Works for completing the sub-contractor's work:

"Jan. 2, 1909. Newark Cornice & Skylight Works. The completing of all metal work for the Lincoln Ave. school, Orange, N. J., as per plans and specification and details by C. F. Guilbert, ark. & to his satisfaction for the sum of twenty-three hundred dollars ($2.300) L. D. K."

In pursuance of this contract the sub-contractor's work was finished by the Newark Cornice and Skylight Works. It was paid therefor by Kilgus. On January 14th, 1909, the complainant filed a lien claim with the proper municipal officers and took such measures as he was advised were necessary, in order to perfect his lien upon the fund coming due from the municipality to the contractor, Kilgus. The validity of this lien is in question.

The complainant proved some correspondence between himself and Kilgus which he claims operates in his favor as features of this case. All the material furnished by him to the American skylight company was furnished between October 20th and October 31st, 1908. On October 16th, Kilgus wrote a letter to the complainant in which he said:

"I will deduct from the American Skylight & Iron Works $1,000 and place same to the credit of your account for payment when the work on the Lincoln Avenue school is completed at Orange. N. J."

On the same day the complainant wrote to Kilgus acknowledging receipt of his letter, stating, among other things, the following:

"We understand that you are willing to agree to make the first payment to us amounting to $1,000 when the American Skylight & Iron Works have done this amount of work. Will you ·be good enough to write us to this effect. as on your original letter as pointed out to you the payment could be withheld by you until the work was done."

12

In a postscript he states that he understands that the first payment is due to the American Skylight and Iron Works when the main work is done; second payment when cornice is on the annex and the roof of the wings has been completed.

Up to this time it is quite manifest that there was no agreement whatever between the parties arising out of this correspondence; but on October 19th, Kilgus, in reply to the last letter of the complainant, stated as follows:

"I will make first payment of $1,000 to you for the account of the American Skylight & Iron Works for material you are to furnish for the Lincoln Avenue school, Orange, N. J."

On December 7th, after the complainant had furnished all his material, Kilgus writes:

"We are authorized to-day to make a payment of $1,000 to you by the American Skylight & Iron Works of Jersey City on account of materials furnished for the Lincoln avenue school, Orange, N. J. We are sending you $500 to-day and will make payment of the balance in a few days; as we have several heavy payments coming due this week we are obliged to make it two payments at this time, which we trust will meet with your satisfaction."

On January 2d, 1909, Kilgus wrote to the complainant, in which he said, among other things:

"In reply to yours of the 31st ult. I beg to say the American Skylight & Iron Works had a contract on the Lincoln avenue school of Orange, N. J., for which I agreed to pay the first thousand dollars when due to you and charge it to the American Skylight & Iron Works account. I find by closer investigation they have not done a thousand dollars worth of work as per the contract, and what they have done is not satisfactory to the terms of the contract, and they have laid down on the job altogether, and I have been obliged to serve them with a three days' notice which has expired and I have not heard from them. Their contract price is $2,700 to do this work, and if you care to complete the work according to the terms of the contract you can do so for the balance of same which is $2,200. I must know immediately," &c.

And on January 7th, of the same year, he again wrote to the complainant giving his version of the understanding between him and the complainant and declining to make any further pay-

ments. There are some other letters, but these are the only ones that seem to me to be important.

I do not see how this correspondence, even if it can be construed into an agreement to pay the debt, or an agreement to stand for the default of the American skylight company, can be of any avail to the complainant in this suit. The present litigation is wholly statutory; it provides only for the foreclosure of liens and does not in any way afford to any of the parties any other relief, much less such relief as can and ought to be afforded by the courts of common law; nor do I think that any statements made by Mr. Kilgus in this correspondence can be held to operate as an estoppel against him under the peculiar and very limited form of proceeding to which the complainant is by our statute entitled. I must therefore hold that if the complainant has any remedy against Mr. Kilgus arising out of this correspondence that remedy must be sought in the common law jurisdiction.

We have left therefore a statement of facts which is extremely simple. It raised the question whether the materialman, who furnishes materials to a sub-contractor who had not completed his contract, is entitled to a lien on the money due or to become due from the municipality to the original contractor. It appears that on January 2d, 1909, Kilgus made a contract with the Newark Cornice and Skylight Works to finish the work to be done under the contract made by the American Skylight and Iron Works. He had already paid to the complainant, on account of the American skylight works contract, the sum of $500; deducting this from the contract price, $2,700, it would leave $2,200 with which to finish the work. He was obliged to pay $2,300, thereby losing, from his own funds, $100, and demonstrating that on that day, January 2d, there was nothing due from the contractor to the sub-contractor, nor in fact under the state of facts could anything thereafter have become due thereunder. This particular point was raised and decided under the New York statute, which is substantially the same as ours, in *Brainard* v. *Kings County, 84 Hun 290; 32 N. Y. Supp. 311;* in that case there was a contract between the county and one Dean for the erection of a bridge in Brooklyn. Cregin was a sub-contractor

for the work or some portion of it. He purchased materials from the plaintiff, which were used by him to finish the contract on his, Cregin's, account, and this Dean did. Brainard filed a lien under the Municipalities Lien law, and in the court below recovered judgment against the county. The county appealed, and the appellate court set the judgment aside on the ground that Cregin's creditors could not have a lien on the fund because there was nothing due from Dean to Cregin. Vice-Chancellor Grey, in *Garrison* v. *Borio, 61 N. J. Eq.* (*16 Dick.*) *236*, adopted the rule laid down in that case. He declared in substance that it was necessary for a claimant under these circumstances in order to recover to prove not only that there was a sum due from the contractor to the sub-contractor, but also that there was a sum due from the municipality to the contractor. It was admitted in the case at bar that the municipality was indebted to Kilgus in an amount sufficient to satisfy the complainant's claim; but inasmuch as it likewise appeared that the contractor owed the sub-contractor nothing, there can be no decree in favor of the lien.

It is quite plain that unless there is some fund to which the lien can attach there necessarily can be no lien. How can a creditor of the sub-contractor work out a lien on the contractor's money through the medium of a sub-contractor who confessedly cannot recover against the contractor? The sub-contractor is in no position to sue the contractor, and it has been held in many cases that the criterion of the ability to claim a lien is the capacity to bring a suit with respect to the indebtedness. The sub-contractor cannot recover against the contractor because he did not complete his contract; he had not earned his contract moneys, and in a suit between him and the contractor the judgment must be in favor of the contractor.

I, therefore, am constrained to hold that the complainant has no lien, and that his bill must be dismissed, with costs.